ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VIII

| EL PIEX PUERTORRIQUEÑO, INC. CONOCIDO COMERCIALMENTE COMO A LA ORDEN DISCOUNT<br><br>Demandante-Apelante<br><br>Vs.<br><br>AL C SNEEDEN<br><br>Demandado-Apelado | KLAN202400188 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Humacao<br><br>Caso Núm. SJ2021CV08384<br><br>Sala: 205<br><br>Sobre: COBRO DE DINERO - ORDINARIO |
|---|---|---|

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 4 de octubre de 2024.

Comparece ante nos, El Piex Puertorriqueño, Inc. h/n/c a la Orden Discount, (en adelante, parte apelante o El Piex), quien presenta el presente recurso de apelación donde solicita nuestra intervención sobre una *Sentencia* emitida el 10 de enero de 2024 y notificada el 11 de enero de 2024 emitida por el Tribunal de Primera Instancia, Sala Superior de Humacao, (en adelante, TPI). En dicho dictamen, el foro apelado dictó Sentencia Sumaria a favor de la parte apelada y *desestimó* la demanda.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración, se *confirma* la Sentencia apelada mediante los fundamentos que expondremos a continuación.

-*I*-

El 22 de diciembre de 2021, se presentó la *Demanda* de epígrafe sobre incumplimiento de contrato y cobro de dinero en la

región judicial de Bayamón.[1] Posteriormente, el 18 de enero de 2023, el señor Al C. Sneeden (en adelante, señor Sneeden o parte apelada) compareció mediante el escrito intitulado *Moción Asumiendo Representación Legal*.[2] Así las cosas, el 19 de enero de 2023 se celebró Vista de Regla 60, a la cual comparecieron las respectivas representaciones legales de las partes, la parte apelada solicitó el traslado del caso a la región judicial de Humacao por asunto de residencia. Ante la oposición de la parte apelante, el Tribunal concedió término para que presentara su posición.[3] **Empero, la parte apelante no sometió su posición para evaluación del Foro a *quo*, por lo que el 24 de febrero de 2023, el TPI, Sala Municipal de Bayamón, ordenó el traslado del caso a la Sala con competencia**.[4] En adición, el señor Sneeden solicitó la conversión del trámite a un procedimiento ordinario.[5] El Piex se opuso en la Vista de Regla 60 y peticionó un término adicional para expresarse.[6] **Sin embargo, la parte apelante no mostró su posición sobre la conversión del procedimiento ordinario, ni en el término concedido por el Tribunal, ni posteriormente.**

El 21 de marzo de 2023, el señor Sneeden presentó el escrito intitulado *Contestación a Demanda*.[7] Posteriormente, el 1 de agosto de 2023 el señor Sneeden envió un Requerimiento de Admisiones a El Piex.[8] Sin obtener respuesta alguna al Requerimiento de Admisiones, el 6 de septiembre de 2023 la parte apelada presentó *Moción Solicitando que se Dicte Sentencia Sumariamente (Moción de Sentencia Sumaria al Amparo de la R. 36),* el cual iba acompañado del Requerimiento de Admisiones enviado previamente.[9] En

---

[1] Anejo 3 del Recurso de Apelación, págs. 10-12.
[2] Anejo 4 del Recurso de Apelación, págs. 13-15.
[3] Anejo 5 del Recurso de Apelación, págs. 16-17.
[4] Anejo 6 del Recurso de Apelación, pág. 18.
[5] Anejo 5 del Recurso de Apelación, págs. 16-17.
[6] SUMAC Entrada Núm. 15.
[7] Anejo 7 del Recurso de Apelación, págs. 19-24.
[8] Anejo 8 del Recurso de Apelación, págs. 25-37
[9] *Íd.*, págs. 25-37.

esencia, adujo que la parte apelada sí pagó la suma de dinero según fue acordado y cumplió con sus obligaciones. Enfatizó que, no existía controversia en que el pago había sido emitido y la prueba documental lo sustentaba.

Ante este escenario, el 26 de septiembre de 2023, El Piex solicitó prórroga para presentar la correspondiente *oposición* a la *Moción de Sentencia Sumaria.*[10] **El 6 de octubre de 2023, el señor Sneeden presentó *Moción Solicitando que se dé por Sometida a la Solicitud de Sentencia Sumaria sin Oposición* toda vez que el plazo solicitado por El Piex había vencido sin la presentación de la moción de oposición.**[11] **Luego de evaluar el Requerimiento de Admisiones enviado por el señor Sneeden, el 12 de octubre de 2023 el Foro a *quo* dio por admitido el requerimiento de admisiones presentado por la parte apelada**. Dicha determinación no fue objeto de una solicitud de reconsideración, ni de un recurso de *certiorari* ante este Tribunal de Apelaciones.

El 13 de noviembre de 2023, el señor Sneeden volvió a presentar *Moción Solicitando que se dé por Sometida a la Solicitud de Sentencia Sumaria sin Oposición* toda vez que, el Tribunal no se había pronunciado sobre su solicitud anterior.[12] **A estos fines, el 15 de noviembre de 2023, El Piex presentó el escrito *Moción en Solicitud de Término Adicional* para poder recopilar toda la evidencia.**[13] La parte apelada presentó el 16 de noviembre de 2023 una *Moción en Oposición a Moción Solicitando Término Adicional para Responder a la Moción de Sentencia Sumaria.*[14] En esencia, arguyó que la parte apelante había incurrido en múltiples incumplimientos con las órdenes del tribunal, dilación de los

---

[10] Anejo 9 del Recurso de Apelación, págs. 38-39.
[11] Anejo 10 del Recurso de Apelación, págs. 40-44.
[12] Anejo 11 del Recurso de Apelación, págs. 45-49.
[13] Anejo 12 del Recurso de Apelación, págs. 50-51.
[14] Anejo 13 del Recurso de Apelación, págs. 52-56.

procedimientos mediante actuaciones de dejadez y desidia. Por lo que solicitó al Tribunal que denegara dicha solicitud. **No empece a haber solicitado el término adicional, la parte apelante no contestó la *Moción de Sentencia Sumaria* presentada, tampoco se pronunció sobre la *Oposición* presentada por la parte apelada ante la solicitud de termino adicional, ni realizó petitorio alguno ante el foro de origen.**

El 10 de enero de 2024 y notificada el 11 de enero del mismo año, el TPI emitió *Sentencia* en la que desestimó la demanda en el caso de marras.[15] En esencia, concluyó que procedía dictar sentencia sumaria a favor del señor Sneeden toda vez que, no existía controversia alguna sobre los hechos materiales que requirieran la celebración de un juicio en su fondo.

Posteriormente, el 18 de enero de 2024, la parte apelada presentó *Memorial de Honorarios de Abogado*.[16] El 23 de enero de 2024, el TPI emitió *Orden* concediendo $6,500.00 en gastos, costas y honorarios de abogado a favor del señor Sneeden.[17] La parte apelante presentó el 26 de enero de 2024 la *Urgente Moción de Reconsideración, Moción de Relevo de Sentencia*.[18] En síntesis, arguyó que todavía se encontraba recopilando prueba adicional y que había controversia sobre la realización del pago emitido por el señor Sneeden. Añadió que, la parte apelada había estado induciendo a error al foro primario, y que la sentencia equivalía a un enriquecimiento injusto. Finalmente, solicitó la continuación de los procedimientos al igual que el descubrimiento de prueba y honorarios de abogado a su favor.

Oportunamente el 29 de enero de 2024, la parte apelada presentó la *Moción en Oposición a Urgente Moción de*

---

[15] Anejo 2 del Recurso de Apelación, págs. 2-9.
[16] Anejo 14 del Recurso de Apelación, págs. 57-60.
[17] Anejo 15 del Recurso de Apelación, pág. 61.
[18] Anejo 16 del Recurso de Apelación, págs. 62-77.

*Reconsideración; Moción de Relevo de Sentencia.*[19] **En resumen, intimó que, las solicitudes de El Piex eran de conocimiento anterior, que no fueron gestionadas con la debida diligencia de su parte y que la solicitud de un *subpoena* a un tercero que había sido identificado desde la contestación a la demanda provista por el señor Sneeden no constituía nueva evidencia.** Añadió, junto a su solicitud la imposición de honorarios por temeridad a su favor.

El 29 de enero de 2024 el TPI emitió *Resolución* declarando *No Ha Lugar* a la *Urgente Moción de Reconsideración; Moción de Relevo de Sentencia* presentada por El Piex.[20] El 30 de enero de 2024, la parte apelada presentó *Moción de Honorarios de Abogado Adicionales.*[21] En síntesis, solicitó una nueva partida por honorarios de abogados que totalizaban $2,200.00. A estos fines, el 31 de enero de 2024 el Foro a *quo* mediante *Orden* concedió la cantidad de $1,375 adicionales por concepto de abogados.[22]

Inconforme con el dictamen, la parte apelante presentó el recurso que nos ocupa y le imputó al foro primario la comisión de los siguientes errores:

> PRIMER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE HUMACAO AL DICTAR SENTENCIA SUMARIA EN EL CASO DEL EPÍGRAFE FUNDÁNDOSE EN QUE NO EXISTÍAN CONTROVERSIAS SOBRE HECHOS MATERIALES QUE REQUIERAN LA CELEBRACIÓN DE UN JUICIO EN SU FONDO.
>
> SEGUNDO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE HUMACAO AL DICTAR SENTENCIA SUMARIA QUE DETERMINA COMO HECHOS PROBADOS LAS ADMISIONES TÁCITAS DE UN REQUERIMIENTO DE ADMISIONES.
>
> TERCER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE HUMACAO, AL NO PERMITIR QUE LA PARTE DEMANDANTE APELANTE DESCUBRA PRUEBA NUEVA QUE SURGIÓ Y SE DIO

---

[19] Anejo 17 del Recurso de Apelación, págs. 80-91.
[20] Anejo 1 del Recurso de Apelación, pág. 1.
[21] Anejo18 del Recurso de Apelación, págs. 92-93.
[22] Anejo 19 del Recurso de Apelación, pág. 94.

POR ENTERADO LUEGO DE CULMINADO EL DESCUBRIMIENTO DE PRUEBA.

CUARTO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE HUMACAO, AL CONCEDER HONORARIOS DE ABOGADO, GASTOS Y COSTAS A FAVOR DE LA PARTE DEMANDADA-APELADA.

Con el beneficio de la comparecencia de ambas partes, procedemos a examinar el derecho aplicable.

*-II-*

*-A-*

La sentencia sumaria es un mecanismo procesal que tiene como propósito la solución, justa, rápida y económica de los litigios civiles que no contengan controversias genuinas de hechos materiales y que, por lo tanto, no ameritan la celebración de un juicio en su fondo. *Segarra Rivera v. International Shipping Agency, Inc.,* 208 DPR 964, 979 (2022). La Regla 36.1 de Procedimiento Civil establece que las partes podrán presentar una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada. 32 LPRA Ap. V, R. 36.1. La sentencia sumaria es una excepción al juicio mediante testimonios vivos frente al juzgador de los hechos. *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 430 (2013). La parte que solicita la sentencia sumaria tiene la responsabilidad de demostrar de manera clara que el promovido no puede prevalecer mediante ningún supuesto de hechos y que el tribunal cuenta con la verdad sobre todos los hechos necesarios para resolver la controversia ante su consideración. *Id.* pág. 473

Por su parte, **el Tribunal tiene discreción para conceder o no la sentencia sumaria**, **ya que el mal uso de esta puede**

**despojar a un litigante de su día en corte, lo cual coartaría su debido proceso de ley**. *Roig Com. Bank v. Rosario Cirino*, 126 DPR 613, 617 (1990) (Énfasis suplido). Es por lo anterior, que no es aconsejable que se utilice el mecanismo de sentencia sumaria cuando hay elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial para dilucidar la controversia que deban ser evaluados por el juzgador. *Segarra Rivera v. International Shipping Agency, Inc., supra*, pág. 980. No obstante, el Tribunal puede utilizar el mecanismo de sentencia sumaria, aun cuando hay elementos subjetivos, si la evidencia que será considerada en la solicitud surge que no existe controversia en cuanto a los hechos materiales. *Cruz Cruz v. Casa Bella Corp.*, 2024 TSPR 47, 213 DPR ___ (2024); *SLG Zapata-Rivera v. J.F. Montalvo, supra*, pág. 442-443.

Ahora bien, antes de utilizar el mecanismo de sentencia sumaria, el Tribunal debe evaluar lo siguiente:

(1) analizará los documentos que acompañan la moción solicitando la sentencia sumaria y los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del tribunal; (2) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *Management Administration Services, Corp v. ELA*, 152 DPR 599, 611 (2000).

En síntesis, el Tribunal de Primera Instancia no podrá dictar sentencia sumaria cuando: "(1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no ha sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre hecho material y esencial, o (4) como cuestión de derecho no proceda". *Fernández Martínez v. RAD-MAN San Juan III-D, LLC.*, 208 DPR 310, 335 (2021).

**Asimismo, si la otra parte desea derrotar una moción de sentencia sumaria, deberá presentar declaraciones juradas y documentos que pongan en controversia los hechos presentados por el promovente**. *PFZ Props, Inc v Gen, Acc Ins. Co.*, 136 DPR 881, 912-913 (1994); (Énfasis suplido). No obstante, el solo hecho de no presentar evidencia que controvierta la presentada por el promovente, no implica necesariamente que procede la sentencia sumaria. *Id.*, pág. 913. Los jueces no están constreñidos por los hechos o documentos evidenciarios que se aduzcan en la solicitud de sentencia sumaria, sino que tienen el deber de considerar todos los documentos en autos, incluso aquella que no haya formado parte de la solicitud, sin dirimir cuestiones de credibilidad. *Vera v. Dr. Bravo*, 161 DPR 308, 333 (2004).

El Tribunal Supremo de Puerto Rico ha señalado que "el hecho de que la otra parte no presente prueba que controvierta la evidencia presentada por la parte promovente de la moción de sentencia sumaria, no implica necesariamente que dicha moción procederá automáticamente si en verdad existe una controversia sustancial sobre hechos esenciales y materiales". *Fernández Martínez v. RAD-MAN San Juan III-D, LLC.*, supra, pág. 337. Dicho de otro modo, **la moción de sentencia sumaria procederá si el juzgador "[q]ueda claramente convencido de que tiene ante sí, de forma no controvertida, todos los hechos materiales pertinentes y de que, por lo tanto, una vista en los méritos resulta innecesaria**". *Íd.* pág. 327. (Énfasis suplido).

En cuanto al estándar de revisión aplicable al Tribunal de Apelaciones al momento de revisar la determinación del foro primario de conceder o denegar la sentencia sumaria, el foro intermedio apelativo solo puede:

(1) considerar los documentos que se presentaron ante el foro primario —cual implica que, en apelación los litigantes no pueden añadir prueba que no fue presentada oportunamente ante el foro primario, ni esbozar nuevas teorías—, (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) determinar si el derecho se aplicó de forma correcta. *Segarra Rivera v. International Shipping Agency, Inc., supra*, pág. 981.

Por utilizar los mismos criterios de evaluación, los foros apelativos se encuentran en la misma posición que el tribunal de instancia. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 116 (2015). Ahora bien, el Tribunal Supremo estableció que el estándar a seguir para revisar la denegatoria o concesión de una moción de sentencia sumaria es el siguiente:

(1) que el Tribunal de Apelaciones se encuentre en la misma posición del Tribunal de Primera Instancia al momento de revisar solicitudes de sentencia sumaria, y que esta revisión sea *de novo*;

(2) que el Tribunal de Apelaciones revise que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en las Reglas de Procedimiento Civil;

(3) que el Tribunal de Apelaciones revise si en realidad existen hechos materiales en controversia y si existen debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y

(4) si los hechos materiales realmente son incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho en la controversia. *Segarra Rivera v. International Shipping Agency, Inc., supra*, pág. 982.

En armonía con lo anterior, la revisión del foro apelativo conlleva examinar *de novo* el expediente de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el tribunal de instancia y realizando todas las inferencias permisibles a su favor. *Birriel Colón v. Supermercados Los Colobos*, 2023 TSPR 120; 213 DPR ___ (2023).

El Tribunal Supremo de Puerto Rico ha reiterado que "[t]oda vez que la moción de sentencia sumaria evita la celebración de un juicio, las deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiese, presentados por las partes en apoyo de su contención, deben admitirse en evidencia en un juicio plenario". *Carpets & Rugs v. Tropical Reps*, 175 DPR 615, 637 (2009); *Jusino et als. v. Walgreens*, 155 DPR 560, 577 (2001).

### -B-

El descubrimiento de prueba dentro del proceso civil está regulado por la Regla 23 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 23. El inciso (a) de la Regla 23.1 de dicho cuerpo reglamentario dispone que las partes podrán hacer descubrimiento sobre cualquier (1) información objeto del descubrimiento que no sea privilegiada y (2) que sea pertinente al asunto en controversia. *ELA v. Casta*, 162 DPR 1, 10 (2004); *Alvarado v. Alemany*, 157 DPR 672, 683 (2002). El concepto de pertinencia como limitación al descubrimiento de prueba, "aunque impreciso, debe ser interpretado en términos amplios". *General Electric v. Concessionaires, Inc.*, 118 DPR 32, 40 (1986). Para que un asunto pueda estar sujeto a descubrimiento, lo único necesario es que esté presente una posibilidad razonable de relación con la cuestión que se pretende adjudicar. *ELA v. Casta, supra*, pág. 13. La amplitud del descubrimiento persigue dos (2) propósitos: garantizar la pronta solución de las controversias y evitar que en la vista en su fondo surjan sorpresas. *Lluch v. España Service Sta.*, 117 DPR 729, 742-743 (1986).

El requerimiento de admisiones constituye una de las herramientas que proveen las Reglas de Procedimientos Civil para imprimirle celeridad a los procesos ante el Tribunal de Primera

Instancia y permite estructurar las controversias del pleito, de forma que se cree un cuadro más claro del proceso. Así, su utilización permite que la parte interpelada admita asuntos en controversia que pudo haber evadido en un interrogatorio o una deposición anterior. *Rivera Prudencio v. Mun. de San Juan*, 170 DPR 149, 171 (2007); *Rosado v. Tribunal Superior*, 94 DPR 122, 133 (1967).

Conforme a la Regla 33 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 33, una parte está facultada para requerirle a la otra que admita la veracidad de cualquier materia que esté dentro del alcance de la Regla 23.1 de Procedimiento Civil, *supra*, relativo "a hechos que están controversia y opiniones relacionadas con los hechos o con la aplicación de la ley a éstos". *Audiovisual Lang v. Sist. Est. Natal Hnos.*, 144 DPR 563, 572 (1997). "**El efecto de dicha admisión es que releva a la parte adversa de tener que presentar en el juicio prueba del hecho admitido y de esta forma propicia que se acorte la audiencia y no se incurran en gastos innecesarios**." *Rivera Prudencio v. Mun. de San Juan*, *supra*, pág. 171. (Énfasis suplido). De ahí que se sostenga que la admisión de cualquier asunto se entenderá definitiva, salvo que el tribunal permita que se retire o se enmiende, "**si ello contribuye a la disposición del caso en los méritos y la parte que obtuvo la admisión no demuestra al tribunal que el retiro o enmienda afectará adversamente su reclamación o defensa**". 32 LPRA Ap. V, R. 33 (b) (Énfasis suplido).

Cónsono con lo anterior, **la parte a quien se le cursa un requerimiento de admisiones tendrá que, bajo juramento, objetar o admitir lo requerido en un término de veinte (20) días, contados desde que se le notifique el requerimiento o dentro del término que el tribunal conceda**. 32 LPRA Ap. V, R. 33 (a). **Si dicha parte no cumple en el referido plazo, "las**

**cuestiones sobre las cuales se solicitó la admisión, automáticamente se tendrán por admitidas".** *Audiovisual Lang v. Sist. Est. Natal Hnos., supra,* pág. 573. (Énfasis suplido). Cabe destacar que para ello no es necesaria la emisión de una orden del tribunal haciendo constar tal hecho.

No obstante lo anterior, "[e]n el ejercicio de su discreción el tribunal debe interpretar la precitada Regla de forma flexible para favorecer en los casos apropiados que el conflicto se dilucide en los méritos". *Íd.*, págs. 573-574. A tenor con ello, el foro de instancia "[d]ebe ejercer especial cuidado cuando se trata de una admisión tácita, o sea, por no haberse contestado el requerimiento dentro del término establecido para ello". *Íd.* Si bien es cierto que la Regla 33, *supra,* es mandatoria y, por tanto, sus disposiciones deben cumplirse de manera sustancial, no es menos cierto que consideraciones técnicas deben ceder cuando su estricta aplicación e interpretación incida sobre la consecución de la justicia. *Íd.,* pág. 575. Después de todo, la interpretación liberal de las Reglas de Procedimiento Civil garantiza asegurar la política pública de que la solución de todo procedimiento sea justa, rápida y económica. 32 LPRA Ap. V, R. 1.

-*C*-

Las adjudicaciones finales de un tribunal gozan de una presunción de validez y corrección, por lo que son recipientes de una acostumbrada deferencia. *SLG Rivera-Pérez v. SLG Díaz-Doe, et al,* 207 DPR 636, 657 (2021); *López García v. López García,* 200 DPR 50, 59 (2018). Ahora bien, *la Regla 49.2* de Procedimiento Civil, 32 LPRA Ap. V, R. 49.2, es el vehículo procesal mediante el cual una parte adversamente afectada por una sentencia, solicita el relevo de esta. *Pérez Ríos y otros v. Luma Energy, LLC,* 2023 TSPR 136, 213 DPR ___ (2023); *SLG Rivera-Pérez v. SLG Díaz-Doe et al, supra,* pág. 656-657; *HRS ERASE vs. CMT,* 205 DPR 689,

698-699 (2020); *López García v. López García, supra*. El propósito de la precitada regla es proveer un justo balance entre dos intereses conflictivos de nuestro ordenamiento jurídico. *López García v. López García, supra*, pág. 60.

La regla en cuestión contempla seis (6) escenarios en los cuales el tribunal podrá relevar a una parte de los efectos de una sentencia dictada en su contra. Estos son:

(a) error, inadvertencia, sorpresa o negligencia excusable;

**(b) descubrimiento de evidencia esencial que, a pesar de una <u>debida diligencia</u>, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48;**

(c) fraude (incluso el que hasta ahora se ha denominado "intrínseco" y el también llamado "extrínseco"), falsa representación u otra conducta impropia de una parte adversa;

(d) nulidad de la sentencia;

(e) la sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continúe en vigor, o

(f) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.

Regla 49.2 de Procedimiento Civil, *supra*. (Énfasis suplido).

Además, la regla dispone un término fatal de seis (6) meses para la presentación del relevo de sentencia, al amparo de esta regla. *Bco. Santander P.R. v. Fajardo Farms Corp.,* 141 DPR 237, 243 (1996). Sin embargo, en cuanto a la controversia planteada, la misma regla aclara que:

Esta regla no limita el poder del tribunal para:
(1) Conocer de un pleito independiente con el propósito de relevar a una parte de una sentencia, una orden o un procedimiento;

(2) conceder un remedio a una parte que en realidad no haya sido emplazada, y

(3) dejar sin efecto una sentencia por motivo de fraude al tribunal. Regla 49.2 de Procedimiento Civil, *supra.*

Con relación a esta disposición en la regla precitada, nuestro más alto Foro explica que "[se] admite generalmente el ejercicio de la acción independiente en casos de sentencias nulas, ya que [é]stas son inexistentes". *Bco. Santander P.R. v. Fajardo Farms Corp, supra,* pág. 244, citando a *Figueroa v. Banco de San Juan,* 108 DPR 680, 689 (1979).

Por otro lado, nuestro más alto Foro ha enfatizado sobre atacar una sentencia final y firme que:

> **[C]abe apuntar que "[u]na vez que se archiva en autos la notificación y se registra la sentencia, ésta se considera final. A partir de ese momento los derechos y obligaciones de las partes quedan adjudicados y la sentencia goza de una presunción de corrección**". (citas omitidas). Por consiguiente, "la sentencia se convierte en firme según el transcurso del tiempo. Es firme una vez transcurrido el término para pedir reconsideración o apelar sin que esto se haya hecho, o al concluir el proceso apelativo*"*. (citas omitidas). **Es decir, una sentencia es final y definitiva** 'cuando resuelve el caso en sus méritos y termina el litigio entre las partes, en tal forma que no queda pendiente nada más que la ejecución de la sentencia'. *(citas omitidas).* Mientras, [l]a adjudicación se presume válida y correcta hasta tanto sea reconsiderada, modificada o revocada mediante un remedio o recurso". (citas omitidas). *SLG Szendrey-Ramos v. Consejo de Titulares,* 184 DPR 133,156-157 (2011). (Énfasis suplido).

### -D-

La Regla 44.1 (a) de Procedimiento Civil, 32 LPRA Ap.V. R. 44.1(a) dispone lo siguiente:

> **Las costas le serán concedidas a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación o revisión**, excepto en aquellos casos en que se disponga lo contrario por ley o por estas reglas. **Las costas que podrá conceder el tribunal son los gastos incurridos necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que una parte litigante debe reembolsar a otra.** (Énfasis en el original). *Puerto Rico Fast Ferries,*

*LLC v. Autoridad de Alianzas Público-Privadas*, 2023 TSPR 121, 213 DPR ___ (2023).

Por otro lado, la Regla 44.1 (d) de las de Procedimiento Civil, *supra*, regulan la concesión de costas y honorarios en un pleito. Veamos:

> En caso que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, **el tribunal deberá imponerle en su sentencia al o a la responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta.** En caso que el Estado Libre Asociado de Puerto Rico, sus municipios, agencias o dependencias haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia una suma por concepto de honorarios de abogado, excepto en los casos en que esté expresamente exento por ley del pago de honorarios de abogado. 32 LPRA Ap. V, R.44.1 (d). *González Ramos v. Pacheco Romero,* 209 DPR 138, 139 (2022).

De igual forma, el Tribunal Supremo de Puerto Rico ha señalado que:

> "el tribunal evalúa la razonabilidad de la solicitud tomando en cuenta su propia experiencia y pericia, la novedad y dificultad de las controversias o el esfuerzo que pueda requerir la defensa de la persona demandada. A base de esto, el tribunal tiene la discreción de aceptar o modificar la cantidad solicitada. Sin embargo, debe consignar por escrito sus razones para llegar a la suma determinada de forma que su cálculo sea revisable". *Ortiz Valle v. Ricomini,* 210 DPR 831 831, 840 (2022).

Así las cosas, "**la determinación de si se ha incurrido o no en temeridad es una tarea que recae en la discreción sana del tribunal sentenciador y solo se intervendrá con ella en casos en los que se desprenda el abuso de tal facultad**". *González Ramos v. Pacheco Romero, supra,* pág. 141; *SLG Flores– Jiménez v. Colberg,* 173 DPR 843, 866 (2008). (Énfasis suplido)

Nuestro máximo Foro judicial ha manifestado que "**la temeridad es aquella conducta que promueve un pleito que se pudo obviar, lo prolonga innecesariamente o que obliga a una parte a involucrarse en trámites evitables**". *Maderas Tratadas v. Sun Alliance,* 185 DPR 880, 925 (2012). (Énfasis suplido).

***III-***

En el presente caso, la parte apelante nos solicita que revoquemos una *Sentencia* emitida por el foro apelado donde a su vez, posteriormente declaró *No Ha Lugar* a su *Urgente Moción de Reconsideración; Moción de Relevo de Sentencia.*

Los primeros tres errores están íntimamente relacionados, por lo que se discutirán en conjunto. En esencia, El Piex sostiene que el Tribunal de Primera Instancia incidió al resolver el pleito de epígrafe mediante el mecanismo de sentencia sumaria luego de haber dado por admitidas el requerimiento de admisiones, toda vez que descubrió evidencia nueva luego de culminado el descubrimiento de prueba. *No le asiste la razón.*

La parte apelante arguyó que procede el Relevo de Sentencia al amparo de la Regla 49.2 de Procedimiento Civil, *supra*, por estar en proceso de descubrir evidencia nueva. La precitada regla provee el remedio cuando se ha realizado una diligencia razonable, que a todas luces en este caso no ha sido evidenciada. El Tribunal Supremo de Puerto Rico ha reiterado en múltiples ocasiones que:

> […]Los tribunales de instancia deben desalentar este tipo de conducta con su efectiva, pronta y oportuna intervención. La tolerancia excesiva por parte de los tribunales milita en contra de los fines de la justicia. Los magistrados de instancia deben tomar todas las medidas necesarias para evitar que por desidia de los abogados se dilate la resolución de un caso. Esto lleva consigo la posible imposición de sanción económica a los abogados que actúan con claro menosprecio de la adjudicación rápida de su caso. (cita omitida). **No podemos pasar por alto que frente a la conducta de total desidia del demandante, la parte demandada desplegó, en todo momento, la mayor diligencia y respeto a las órdenes del tribunal. [Las Reglas de Procedimiento Civil] no puede[n] ser utilizada[s] para premiar conducta de este tipo en perjuicio de los intereses de la otra parte y la buena administración de la justicia. <u>Hemos resuelto que, aunque como regla general no favorecemos la privación de su día en corte a un litigante, ésta es medida procedente en casos extremos, como el presente, en que no hay duda de la falta de diligencia de la parte contra quien se toma la sanción.</u>** (citas omitidas) (Énfasis suplido y subrayado nuestro). **Una parte que ha acudido al tribunal, pone**

> **en movimiento la maquinaria judicial y luego se cruza de brazos sin mostrar interés y diligencia, a pesar de haber sido apercibida de las consecuencias de su inacción, no puede pretender que ese abuso del proceso sea sancionado por el tribunal, relevándolo de las consecuencias de su comportamiento**. *Dávila v. Hosp. San Miguel Inc.*, 117 DPR 807, 819 (1986);(Énfasis suplido.)

La parte apelada envió a El Piex un Requerimiento de Admisiones al amparo de la Regla 33 de Procedimiento Civil, *supra*. **La parte apelante nunca emitió contestación a este, ni solicitó prórroga para contestar el mismo**, lo que facilitó que el señor Sneeden solicitara que se dieran por admitidos los hechos allí expuestos, **tal y como expresamente lo ordena la Regla 33**, y tal como se ha destacado en la jurisprudencia interpretativa de nuestro máximo foro judicial.

Destacamos algunas expresiones del Tribunal Supremo de Puerto Rico: "**El efecto de dicha admisión es que releva a la parte adversa de tener que presentar en el juicio prueba del hecho admitido y de esta forma propicia que se acorte la audiencia y no se incurran en gastos innecesarios**". *Rivera Prudencio v. Mun. de San Juan, supra*, pág. 171. (Énfasis suplido). Por otro lado, **"[s]i dicha parte no cumple en el referido plazo, las cuestiones sobre las cuales se solicitó la admisión, automáticamente se tendrán por admitidas".** *Audiovisual Lang v. Sist. Est. Natal Hnos., supra*, pág. 573. (Énfasis suplido y subrayado nuestro).

Los hechos que se dieron por admitidos en el Requerimiento de Admisiones fueron:

> 1. Se admite que la nevera entregada por la parte Demandante a la parte Demandada no funcionaba correctamente.
> 2. Se admite que en febrero de 2021 la parte Demandante recibió el pago de $10,202.25 de parte de la parte Demandada.
> 3. Se admite que la parte Demandada reclamó que la nevera no funcionaba.
> 4. Se admite que la parte Demandante se negó a arreglar la nevera.

5. Se admite que la parte Demandante no arregló la nevera entre los meses de febrero 2021 a julio 2021.

6. Se admite que en mayo de 2021 la parte Demandante tenía en sus cuentas el pago de $10,202.25.

7. Se admite que antes de agosto de 2021 no se hizo gestión alguna para arreglar la nevera del Demandado.

8. Se admite que al Demandado se le entregó una nevera defectuosa.

9. Se admite que en septiembre de 2021 las cuentas de la parte Demandante reflejaban el pago de $10,202.25.

10. Se admite el Demandado hizo el pago de $10,202.25.

11. Se admite que la nevera fue arreglada en agosto de 2021.

12. Se admite que Citibank fue quien debitó los pagos.

13. Se admite que Citibank fue quien acreditó los pagos.

14. Se admite que los estados de cuenta del Demandado demuestran que se pagó el dinero en algún momento en agosto de 2021.

15. Se admite que la parte Demandante tiene conocimiento de que para el mes de septiembre de 2021 el Demandado había cumplido con su obligación de pago.

16. Se admite que la razón para los chargeback fue que la nevera entregada al Demandado no funcionaba correctamente.

17. Se admite que la parte Demandante tenía conocimiento de que la nevera no funcionaba.

18. Se admite que tan pronto fue arreglada la nevera, el Demandado revirtió el chargeback con Citibank.

19. Se admite que el Demandado no le adeuda nada a la parte Demandante.

20. Se admite que la parte Demandante tiene conocimiento de que los $10,202.25 fueron pagados por el Demandado.

Según expuesto en el derecho pertinente a esta regla, si bien el foro primario tenía discreción para interpretar la precitada Regla de forma flexible para celebrar el caso en sus méritos, no es menos cierto que si una parte no cumple en el plazo referido, "las cuestiones sobre las cuales se solicitó la admisión, automáticamente se tendrán por admitidas". *Audiovisual Lang v. Sist. Est. Natal Hnos., supra*, pág. 573. **Es por ello que, ante la inercia promovida por El Piex, el foro de origen dio por admitido el Requerimiento de Admisiones**. No se desprende del expediente de marras que El Piex haya solicitado prórrogas para contestar el Requerimiento de Admisiones, ni haya promovido

ningún otro tipo de trámite. No se desprende de la totalidad del expediente, que la parte apelante haya realizado gestión ninguna dirigida a defender su causa de acción. Los trámites procesales de este caso demuestran una crasa dejadez y falta de diligencia por parte de la parte apelante. De hecho, la parte apelante en ningún momento presentó una oposición a la moción de sentencia sumaria presentada por el señor Sneeden. Sobre el particular, valga destacar que transcurrieron aproximadamente cuatro (4) meses desde que la parte apelada presentó su moción de sentencia sumaria hasta que el TPI dictó la *Sentencia* apelada, por lo que la parte apelante tuvo amplia oportunidad para expresarse, no sólo sobre la Orden dando por admitido el Requerimiento de Admisiones, sino también sobre la solicitud de sentencia sumaria interpuesta por la parte apelada.

Conforme hemos adelantado, al momento de revisar una determinación del foro de instancia respecto a una solicitud de sentencia sumaria, estamos llamados a realizar una revisión de *novo* y limitarnos únicamente a adjudicar las controversias con los documentos que obran en el expediente ante el foro de instancia. Luego de efectuar dicho análisis, a la luz de los asuntos que se dieron por admitidos, el Foro a *quo* determinó que sobre los siguientes hechos esenciales y pertinentes no existía controversia y que hacemos formar parte de esta sentencia:

1. La parte Demandada acudió a la tienda "A la Orden Discount" el 16 de febrero de 2021 a adquirir una nevera.
2. La parte Demandada pagó $10,202.25 por la nevera, con una tarjeta Visa de Citibank, que finaliza con el número 6325.
3. Los $10,202.25 fueron debitados en su totalidad de la cuenta de la parte Demandada el 17 de febrero de 2021.
4. El 20 de febrero de 2021 la parte Demandante entregó a la parte Demandada una nevera, con valor de $10,202.25.
5. Una vez instalada en la residencia del Demandado, la nevera inundó la cocina del Demandado y congeló

toda la comida que ubicaba dentro de ella, ante la ausencia de piezas, como un regulador.

6. La parte Demandada inmediatamente notificó a la parte Demandante de estos defectos en la nevera.

7. La parte Demandante se negó a arreglar o reemplazar la nevera.

8. El 28 de febrero de 2021, el Demandado inició una reclamación con Citibank.

9. La reclamación ante Citibank se debía a la negativa del Demandante de cumplir con sus obligaciones, como reparar la nevera.

10. CitiBank le otorga un crédito condicional a la parte Demandada por los $10,202.25.

11. El 2 de marzo de 2021, CitiBank vuelve a debitar de la cuenta del Demandado, la cantidad de $10,202.25, y se la paga al Demandante.

12. El 30 de marzo de 2021, Citibank otorga otro crédito de $10,202.25 a la parte Demandada.

13. El 3 de agosto de 2021, Citibank nuevamente debita la cantidad de $10,202.25 de la cuenta de banco de la parte Demandada, y se la paga al Demandante.

14. Citibank nunca volvió a acreditar la cantidad de $10,202.25 a la parte Demandada.

15. Los $10,202.25 correspondientes al pago de la nevera fueron pagados en su totalidad por la parte Demandada a la parte Demandante.

16. La parte Demandada cumplió con su obligación de pago ante la parte Demandante.

17. La nevera entregada a la parte Demandada no funcionaba correctamente.

18. En febrero de 2021 el Demandante recibió el pago de $10,202.25 de parte de la parte Demandada.

19. La parte Demandada reclamó que la nevera no funcionaba.

20. La parte Demandante se negó a arreglar la nevera.

21. La parte Demandante no arregló la nevera entre los meses de febrero 2021 a julio 2021.

22. En mayo de 2021 la parte Demandante tenía en sus cuentas el pago de $10,202.25.

23. Antes de agosto de 2021 no se hizo gestión alguna para arreglar la nevera del Demandado.

24. Al Demandado se le entregó una nevera defectuosa.

25. En septiembre de 2021 las cuentas de la parte Demandante reflejaban el pago de $10,202.25.

26. El Demandado hizo el pago de $10,202.25.

27. La nevera fue arreglada en agosto de 2021.

28. Citibank fue quien debitó los pagos.

29. Citibank fue quien acreditó los pagos.

30. Los estados de cuenta del Demandado demuestran que se pagó el dinero en algún momento en agosto de 2021.

31. La parte Demandante tiene conocimiento de que para el mes de septiembre de 2021 el Demandado había cumplido con su obligación de pago.

32. La razón para los chargeback fue que la nevera entregada al Demandado no funcionaba correctamente.

33. La parte Demandante tenía conocimiento de que la nevera no funcionaba.

34. Tan pronto fue arreglada la nevera el Demandado revirtió el chargeback con Citibank.

35. El Demandado no le adeuda nada a la parte Demandante.

36. La parte Demandante tiene conocimiento de que los $10,202.25 fueron pagados por el Demandado.

Posteriormente, la parte apelante añadió que, descubrió evidencia nueva luego de que culminara el período del descubrimiento de prueba y emitida la *Sentencia*. **Es menester destacar que el Foro a *quo motu proprio* concedió a El Piex una prórroga para que contestara la *Moción de Sentencia Sumaria* presentada por el señor Sneeden. Empero, la parte apelante no sometió ningún documento al foro primario, y procedió a solicitar una nueva prórroga vencido ya el término**. En esencia, arguyó que aún le faltaba evidencia por recibir. Subsiguientemente, mediante la *Moción de Reconsideración; Moción de Relevo de Sentencia* manifestó que la información necesaria se encontraba en manos de terceros, por lo que solicitó del foro primario que, emitiera un *Subpoena* contra las compañías Citibank, Dynamics Payments, Corp. y Firstdata para obtener los estados de cuenta del señor Sneeden.

Añadió que:

Esto, se estará demostrando mediante la obtención de la prueba en manos de terceros, la cual advinimos en conocimiento sobre su existencia en semanas recientes y que no se ha podido obtener por encontrarse en posesión de terceros que no forman parte del caso. Por tanto, esta prueba nueva resulta crucial y determinante en la resolución de la controversia que originó el caso de autos.[23]

**Ante esta actuación, el señor Sneeden se opuso y reiteró que dicha información se desprendía de la contestación a la demanda.** Añadió que los múltiples incumplimientos en el desarrollo del descubrimiento de prueba fueron promovidos por parte de El Piex. A estos fines, el Tribunal de Primera Instancia denegó dicha solicitud y añadió:

---

[23] Anejo 16 del Recurso de Apelación, pág. 71.

LAS REGLAS DE PROCEDIMIENTO CIVIL ES EL ORDENAMIENTO POR EL CUAL SE RIGEN LOS TRIBUNALES PARA EL CUMPLIMIENTO DEL OBJETIVO PRINCIPAL QUE ES HACER JUSTICIA DENTRO DE LOS PARAMETROS DEL DERECHO. EL INCUMPLIMIENTO DE ALGUNA PARTE CON LOS TERMINOS PROVISTOS CONLLEVA EL QUE SE PUEDAN IMPONER SANCIONES O COMO EN EL PRESENTE CASO SE DEN POR ADMITIDAS EL REQUERIMIENTO DE ADMISIONES. **SIENDO ADMITIDO EL MISMO, POR LA DEJADEZ DE LA PARTE DEMANDANTE, NO EXISTE CONTROVERSIA DE HECHOS POR ATENDER**.[24] (Énfasis suplido).

Adviértase que, de un examen del expediente, concluimos que una vez admitido el Requerimiento de Admisiones, **procedía el relevo la prueba, la parte apelante se cruzó de brazos y esperó a que recayera una sentencia en su contra para impulsar un descubrimiento de prueba, que en efecto se desprendía de la contestación a la demanda**.[25] Por lo que es forzoso concluir que los hechos relacionados con el Requerimiento de Admisiones fueron probados, en ausencia de evidencia aportada por El Piex que los controvirtieran y rebatiera. Por tanto, no incidió el TPI a utilizar dicho Requerimiento de Admisiones para efectuar sus determinaciones de hechos incontrovertidos y arribar a sus conclusiones de derecho. Por ende, no existiendo controversia de hechos que impidiera una solución mediante el mecanismo de Sentencia Sumaria, el proceder del foro de origen fue correcto en derecho. No procedía relevar a la parte apelante de la sentencia acaecida porque sus alegaciones no se fundamentan en prueba nueva, sino en prueba notificada desde la contestación de la demanda que no descubrió diligentemente por razones desconocidas que tampoco fueron argumentadas. *No se cometieron los errores señalados.*

Por último, sobre el último error señalado por El Piex, sostiene la parte apelante que erró el foro primario al conceder

---
[24] Anejo 1 del Recurso de Apelación, pág. 1.
[25] Anejo 7 del Recurso de Apelación, págs. 19-24.

honorarios de abogado, gastos y costas a favor del señor Sneeden. *No le asiste la razón.*

Como puede observarse, resulta evidente que la parte apelante incurrió en reiterados incumplimientos con varias órdenes emitidas por el Tribunal de Primera Instancia durante el trámite de este caso. Precisamente, por esta razón fue que el foro primario concluyó que por la dejadez de la parte apelante fue que se dio por admitido el Requerimiento de Admisiones y le impuso el pago de honorarios de abogado. La determinación de conceder la partida de honorarios de abogado no constituye un abuso de discreción. Por entender que no estamos ante alguna de las circunstancias excepcionales que hacen improcedente la imposición del pago de honorarios de abogado, concluimos que la determinación de temeridad estuvo sujeta a la sana discreción del Tribunal de Primera Instancia. Cónsono con lo anterior, nuestro más Alto Foro ha expresado que la imposición de los honorarios de abogados que hace el tribunal inferior son un asunto inherente a la discreción del adjudicador primario, por lo que esta Curia no debe intervenir con dichas determinaciones salvo que medie error manifiesto, pasión, prejuicio o parcialidad y, por ende, abuso de discreción. *Fernández Martínez v. RAD-MAN San Juan III-D, supra,* pág. 338; *Carattini v. Collazo Syst. Analysis, Inc.,* 158 DPR 345, 357 (2003).

### -IV-

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones